UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:24-CV-00004-DLB-EBA

JOSEPH FRANCIS SMITH,                                                                    PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

EASTERN KENTUCKY
CORRECTIONAL COMPLEX, *et al.*,                                          DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment filed by Defendants the Eastern Kentucky Correctional Complex (EKCC) and Correction Officers Coty Fields, Alan Dube, Joshua Adams, Rosetta Spears, and Crit Hensley (collectively, the Defendants). [R. 106]. By prior Order, Chief Judge David L. Bunning referred this matter the undersigned for the purpose of preparing a recommended disposition on any dispositive matter. [R. 23]. Plaintiff Joseph Francis Smith filed a response entitled "motion to strike" the Defendants' motion. [R. 110]. The motion to strike has been fully briefed, [R. 111; R. 114], therefore these matters are ripe for review. The Court recognizes that Smith is proceeding *pro se* and thus will construe his pleadings more leniently. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). For the reasons that follow, the undersigned will recommend that the Defendants' motion for summary judgment, [R. 106], be granted and will deny Smith's motion to strike. [R. 110].

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Smith is an inmate currently being housed at the Kentucky State Penitentiary in Eddyville, Kentucky. [R. 106-1 at pg. 1]. At the time of the events that give rise to the underlying complaint, Smith was an inmate at the EKCC in West Liberty, Kentucky. [*Id*.]. The facts underlying the

complaint occurred on February 11, 2023, when Smith removed a sprinkler head from his cell, causing water to flood his cell, the walk, and the cells of other inmates. [*Id*.]. The Captains Office authorized Fields to assemble a cell entry team comprised of Dube, Adams, Steven Taylor, Steve Trusty, and Robert Collins. [R. 8 at pg. 2]. Fields then verbally commanded Smith to come to the door of his cell to be restrained. [*Id*.]. Smith alleges that he complied with the orders to be restrained, was handcuffed by Fields, and then told to lie face down on his bed. [*Id*.]. As he was lying down, Smith states that his cell door opened, someone yelled "stop resisting" and one of the Officers began slamming his shield into his back. [*Id*. at pg. 3]. Smith then alleges that one of the Officers got on top of his back, and his weight caused his handcuffs to cut into his wrists. [*Id*.]. Smith also claims that despite his cooperation, he was tased twice by Fields and at one point one of the officers also sprayed him with O/C spray. [*Id*.]. Smith was then escorted out of the cell down a set of stairs to the restraint chair. [*Id*.]. Smith alleges that because of a combination of O/C spray and water, he could not see where he was going nor could he see which of the officers told the nurse not to decontaminate his face and eyes. [*Id*.]. Further, Smith alleges that after the events, he was "found guilty (automatically)" at the prison disciplinary proceedings EKCC 2023-0729 and EKCC 2023-0698. [*Id*.]. Smith claims false testimony and nonexistent evidence were used during the proceedings. [*Id*.].

Following the events, Smith commenced the underlying action by filing his Complaint in the Western District of Kentucky, but the case was transferred to the Eastern District due to improper venue. [R. 3]. Smith then filed an amended complaint, which alleged that the "defendants in the least violated the First, Eighth, Tenth and Fourteenth Amendment, deliberate indifference, excessive use of force by an officer, my rights of due process, fair trial, right to medical attention and treatment, inhumane treatment, disregard to safety, severe injury or death." [R. 8].

On July 25, 2024, Smith filed a Motion to Supplement asking the Court for leave to add Hensley as a Defendant, alleging retaliation, [R. 32], which the Court granted. [R. 44]. Therein, Smith alleges that Hensley was the "main instigator in April 4, 2024 happening" by removing items that were allowed through the EKCC's policy such as Smith's legal correspondence and book material. [R. 106-1 at pg. 14 (citing [R. 32])]. Smith also claims Hensley harassed him with room searches, tapping on Smith's door as he passes, intentionally targeting Smith when he is on shift, and engaging in a manner that Smith describes as "extremely bias and adamant" against him. [*Id*.].

### SUMMARY JUDGMENT STANDARD

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. FED. R. CIV. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a motion then "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324 (internal quotation marks omitted). This is so because '[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 323-24. To avoid summary judgment, the non-movant *must* come forward with evidence on which a jury could reasonably find in its favor, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986), as courts are not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A Court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex*, 477 U.S. at 324. Courts reviewing motions for summary judgment "must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

## ANALYSIS

### 1. Motion to Strike

As an initial matter, the undersigned will address Smith's motion to strike. [R. 110]. While Smith did not file a response to the Defendants' motion for summary judgment, he did file a "Motion to Strike Defendants Motion for Summary Judgment on Behalf of Defendants." [*Id.*]. Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "[T]he action of striking a pleading should be sparingly used." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

In his motion, Smith does not allege that the Defendants' motion includes an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Instead, Smith disagrees with the Defendants' argument that he failed to exhaust his administrative remedies. [R. 110 at pgs. 1-3]. Even if Smith's argument were to prevail, the fact that the Defendants brought a failure to exhaust argument does not warrant the motion being stricken from the record. Therefore, the undersigned will deny Smith's motion to strike. [R. 110].

## 2. Motion for Summary Judgment

Next, the undersigned will address the Defendants' motion for summary judgment. [R. 106]. Therein, Defendants make several arguments for why they are entitled to summary judgment on Smith's claims. [*Id.*]. However, Smith only contests the Defendants' argument that he failed to exhaust his administrative remedies. [*See* R. 110; R. 114]. "Parties forfeit arguments at the summary judgment stage by failing to adequately address them in response to a motion for summary judgment." *Grand v. City of Univ. Heights*, 159 F.4th 507, 515, (6th Cir. 2025) (citing *Bennett v. Hurley Med. Ctr.,* 86 F.4th 314, 324 (6th Cir. 2023)). Furthermore, as discussed below, because Smith *did* fail to exhaust his administrative remedies, the undersigned will not address the Defendants' remaining arguments.

a. Exhaustion of Administrative Remedies

The Defendants argue that Smith failed to exhaust his administrative remedies, which, as they argue, bars his claims. [R. 106-1 at pg. 4]. An inmate's failure to exhaust his administrative remedies is an affirmative defense and it is the Defendant's burden to plead and prove by a preponderance of the evidence. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2002). Under the Prison Litigation Reform Act (PLRA), prisoners may not bring a lawsuit regarding prison conditions until they have "proper[ly] exhaust[ed]" all administrative remedies. 42 U.S.C. §

1997(e)(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The proper exhaustion of administrative remedies "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 U.S. F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.,* 636 F.3d 218, 223 (6th Cir. 2011) (citation omitted) (collecting cases)). When a prisoner tries to comply but falls short the Court analyzes "whether those 'efforts to exhaust were sufficient under the circumstances.'" *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier*, 636 F.3d at 224)).

The EKCC's inmate grievance procedure is a four-step process that begins with filing a written grievance within five business days after the incident occurs. [R. 106-4 at pg. 8]. Smith conceded that he never filed a grievance on the issue, which was confirmed by grievance coordinator Paul Holbrook who reviewed grievances filed by Smith. [R. 8 at pg. 5; R. 106-5]. Instead, Smith explains that he failed to file a grievance because he had been placed on behavior watch for longer than five business days, essentially arguing that the grievance process was unavailable to him or that the process was futile. [R. 8 at pg. 5].

Even though he has conceded that he failed to follow the EKCC's grievance policy, Smith's claim may still be viable. Smith's "obligation to exhaust hinges on the 'availab[ility]' of administrative remedies. A prisoner is thus required to exhaust only those grievance procedures

that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 633 (2016) (quoting *Booth v. Churner,* 532 U.S. 532 U.S. 731, 738 (2001)). The Supreme Court has recognized three set of circumstances where an administrative remedy is not "available" and thus an inmate is not required to exhaust before filing suit:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.,* some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Id*. (internal citations omitted).

Here, it appears Smith is arguing that the third circumstance applies to him. [R. 8 at pg. 5]. Essentially, Smith argues that the process for filing a grievance was unavailable to him while he was on behavioral watch. [*Id*.]. And because he was on behavior watch for longer than five days after the alleged incident, the time required to file a grievance under the EKCC's grievance procedures, he was thwarted from taking advantage of the grievance process. [*Id*.].

However, the Defendants explain that bed assignment records for Smith establish that the incident in question occurred Saturday, February 11, 2023. [R. 106-1 at pg. 6 (citing [R. 106-6])]. On February 13, Smith was placed on behavioral watch and moved to Restrictive Housing Dorm 5, BL Wing, Cell 10. [*Id*.]. Before being transferred to the Kentucky State Penitentiary on May 9, 2024, Smith moved between Dorm 5 and Dorm 1, both of which are restrictive housing units. [*Id*.]. The grievance log attached to the affidavit of grievance coordinator Paul Holbrook shows that during that period when Smith was assigned to restrictive housing, he filed several grievances regarding a variety of other matters. [*Id*. (citing [R. 106-5])]. Yet, none of the grievances filed by Smith included the allegations that are the subject of this complaint, nor did they name any of the

Defendants listed in this action. [*Id*. (citing [R. 106-5])]. The record indicates that Smith had the ability to file grievances even when he was in a restrictive housing unit. Therefore, the EKCC's administrative remedy *was* "available" and thus Smith was required to exhaust those remedies before filing suit. Because Smith failed to do so, the Defendants' motion for summary judgment, [R. 16], should be granted.

Moreover, in his motion to strike, Smith makes an additional argument that the underlying claims were non-grievable, and therefore he was not required to file a grievance before bringing suit. [R. 110 at pg. 2]. Specifically, Smith argues that because he destroyed property when he broke the sprinkler head, prison disciplinary procedures govern the matter and therefore it falls under a "non-grievable issue." [*Id*. (citing [R. 106-4])]. However, as the Defendants argue, the destruction of property was merely the catalyst for the EKCC's staff response which led to Smith's complaint alleging excessive force and retaliation, which are grievable issues. [R. 111 at pg. 4]. Therefore, because Smith failed to exhaust his administrative remedies which were made available to him, the undersigned will recommend that the Defendants' motion for summary judgment, [R. 106], be granted. *See McDowell v. Mattingly*, No. 3:20-cv-383-CHB, 2021 WL 2211686, at *4 (E.D. Ky. June 1, 2021) (holding Plaintiff's failure to exhaust administrative remedies "alone is a sufficient basis for granting summary judgment in Defendants' favor.") (citing *Arflack v. County of Henderson*, 412 F.App'x 829, 831-32 (6th Cir. 2011) (affirming district court's granting of summary judgment when an inmate failed to exhaust his administrative remedies before commencing the litigation)).

### CONCLUSION

The Court, having considered the issues and being otherwise sufficiently advised,

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, [R. 106], be

**GRANTED**.

  **IT IS FURTHER ORDERED** that Smith's Motion to Strike, [R. 110], is **DENIED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. FED. R. CIV. P. 72(b)(2).

Signed May 7, 2026.

**Signed By:**

*Edward B. Atkins*  *EBA*

**United States Magistrate Judge**